## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

PETER FLORES,

                      *Plaintiff,*

       vs.

ROBERT F. KENNEDY, JR., as
Secretary of the Department of Health
& Human Services; the UNITED STATES
DEPARTMENT OF HEALTH & HUMAN
SERVICES, a federal department;
THOMAS J. ENGELS, as Administrator
of the Health Resources & Services
Administration; and the HEALTH
RESOURCES & SERVICES
ADMINISTRATION, a federal agency,

                    *Defendants.*

Civ. No. _____

**COMPLAINT**

## INTRODUCTION

1.    Plaintiff Peter Flores is a licensed clinical social worker to the underserved within his community in Sunset Park, Brooklyn. In 2023, after six years of service at NYU Langone, Peter accepted a $25,000 federal student loan repayment grant from the Health Resources & Services Administration ("HRSA" or the "Agency") through the National Health Service Corps ("NHSC") to help defray the costs of his education. In exchange, he agreed to continue serving his community for two years on a half-time basis.

2.    Months later, NYU Langone promoted Peter to a supervisory position within the same healthcare system. In that role, he continued serving the same

patient population, supervising psychiatric units, expanding crisis-response services, and handling patient care when necessary. Only after he accepted the promotion did the Agency inform him that the new position did not qualify under the terms of his contract. In response to Peter's promotion, the United States government punished Peter, refusing to allow him to return the grant principal and instead charging him approximately $85,000 in penalties and accrued interest.

3.     The terms of Peter's loan repayment grant require him to work half-time for two additional years at NYU Langone in Sunset Park, a designated Health Professional Shortage Area. Unbeknownst to Peter at the time, the Agency construed his internal promotion within the same healthcare system as violating his contract—even though he continues to serve the same patient population that qualified him for the grant in the first place.

4.     When he discovered that the Agency planned to penalize him, Peter jumped through every possible hoop to remove his service obligation without incurring financial penalties. He tried to return the money, filed a waiver request, and sought reconsideration of the Agency's determination. The Agency offered no relief, denying each request. And Peter cannot return to the lower-paid, lower-responsibility role he held when he accepted the grant because that position has been filled.

5.     On top of the grant principal, Peter now owes the Agency $72,750.84 in penalties and $28,307 in interest compounded daily (which continues to accrue). The

Agency refuses to accept the grant principal and cancel Peter's obligation and the penalties.

6.    The Agency violates the Eighth Amendment because it imposes extraordinary financial penalties on Peter for innocent conduct. And because the Agency seeks to exact punitive damages without affording a jury trial, its enforcement scheme also violates the Seventh Amendment.

7.    Absent judicial relief, Peter—who continues to serve the very population the NHSC program was designed to support—will face extraordinary financial punishment.

JURISDICTION AND VENUE

8.    This action arises under the Constitution and laws of the United States, including the Administrative Procedure Act, 5 U.S.C. §§ 702 and 704, and the Seventh and Eighth Amendments to the United Sates Constitution.

9.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because the issues in controversy arise under the Constitution and laws of the United States, and thus implicate federal questions.

10.    This Court has the authority to enter a declaratory judgment pursuant to 28 U.S.C. § 2201 and injunctive relief pursuant to 5 U.S.C. § 705 and Federal Rule of Civil Procedure 65.

11.    This Court has personal jurisdiction over Defendants as officers and agents of the United States acting in their official capacities.

12.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(e)(1) because Peter resides in this District, a substantial part of the events giving rise to the claims occurred in this District, no real property is involved in this action, and Defendants are officers, employees, or agencies of the United States.

## PARTIES

13.     Plaintiff Peter Flores is a natural person and resides in New York County, New York.

14.     Defendant United States Department of Health and Human Services (the "Department") is a federal executive department. The Department houses and oversees HRSA and is responsible for the policies, regulations, and enforcement decisions challenged in this action.

15.     Defendant Robert F. Kennedy is the Secretary of the United States Department of Health & Human Services ("Secretary"). He is sued in his official capacity. As Secretary, he is the head of the Department and is ultimately responsible for the administration and enforcement of federal health workforce programs, including the NHSC Loan Repayment Program (the "Program).

16.     Defendant Thomas J. Engels is the Administrator of HRSA. He is sued in his official capacity. As Administrator, he is responsible for the administration of HRSA programs, including the Program, and for the agency determinations at issue in this case.

*Complaint*                                                                                  4

17.     Defendant Health Resources and Services Administration is a federal agency within the Department. HRSA administers the Program, determines whether participants have satisfied their service obligations, adjudicates waiver requests, and assesses penalties and interest for alleged breaches. HRSA made and enforced the final agency actions challenged in this Complaint. The Agency oversees the Program, including applications, penalties, and requests for waivers of service obligations.

18.     Both the Department and HRSA are "agencies" within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551(1).

## FACTUAL ALLEGATIONS

19.     In 2017, Peter graduated from New York University with a Master of Social Work degree. He then earned his licensure as a Licensed Clinical Social Worker, Certified Case Manager, and Certified Advanced Social Work Case Manager.

20.     Peter has worked his whole career in the same healthcare system in his community—NYU Langone. Shortly after graduation, in June 2017, Peter began working as a social worker at NYU Langone Hospital-Brooklyn (the "Hospital"). In November 2022, the Hospital promoted Peter, who was transferred to Sunset Park-Sunset Terrace Family Health Center at NYU Langone (the "Clinic"). While he was at the Clinic, Peter applied to and was accepted into the NHSC student loan repayment program.

21.     Peter signed a contract to participate in the NHSC student loan repayment program in September 2023, six years after he began serving as a social worker in the NYU-Langone healthcare system. The Program provides scholarships

to students and loan repayment grants to healthcare workers who, like Peter, serve at certain facilities that care for underserved populations.

22.     Peter's NHSC contract began on September 22, 2023. NHSC provided him a $25,000 loan repayment award, the terms of which required Peter to serve half-time for two years at the Clinic or another qualifying site.

23.     When he applied, Peter did not anticipate any issues with completing his service term. He enjoyed his work at the Clinic and was grateful for the opportunity to reduce his student loan debt.

24.     At the Clinic, Peter launched and led a new program called OnTrackNY. This out-patient program offers intensive services and tailored care for young people experiencing their first psychosis episode. Under his leadership, the OnTrackNY program showed significant benefits for participants.

25.     Peter's supervisors recognized his work and approached him in December of 2023 about an assistant director position at the Hospital. Peter interviewed for the position and received the promotion.

26.     Peter's role as assistant director was within the same healthcare system as the Clinic, at a facility a mere 1.2 miles from his previous worksite.

27.     As an assistant director, Peter oversaw the psychiatric units at the Hospital, including the psychiatric emergency room. In his new position, Peter served the same community within the same healthcare system. He helped patients transition from inpatient care at the Hospital to outpatient care at the Clinic. While his role was primarily supervisory, he still handled patient care when escalations

occurred—often multiple times a week. Peter currently leads the expansion and training of new social work staff, including community-based mobile crisis teams.

28.     Only after he accepted the promotion did Peter learn that the Agency did not consider his new position to satisfy the terms of the contract. The Agency notified him on December 10, 2024 that he was in breach of his contract and that the Agency had imposed $72,750 in penalties, on top of the outstanding grant principal of $22,427.

29.     In addition to the penalties, the Agency charges daily compounded interest at a rate of 12.5%.[1] Interest began to accrue on February 10, 2024, which the Agency asserts is the date of contract breach. The Agency assesses interest on the combined principal and penalties, such that Peter accrued over $12,500 in interest over a single year on a loan repayment grant that awarded him just $12,500 per year of service.

30.     The Agency has never informed Peter of the total interest he owes. On information and belief, Peter owes $28,307 in interest, which continues to accrue.

31.     In total, as of March 11, 2026, Peter owes the Agency $123,484.

32.     Had Peter known of this extraordinary penalty, he would not have accepted the promotion. He even asked his supervisors if he might be able to return to his former position, but that position had been filled.

---

[1] This is the maximum legal rate as of the date of breach calculated by the Agency.

33.    Upon learning of the penalty, Peter tried to return the $25,000 grant in its entirety. After all, he had only served a few months of his contract and was ready to repay the grant in full. But the Agency refused to accept the grant.

34.    Instead, an Agency representative told Peter to submit a waiver request, advising him that he should not attach any documentation to his request but simply provide a narrative of his situation and ask to return the money. He followed these instructions, but the Agency denied Peter's waiver request on December 6, 2024.

35.    During the period that it was considering his first waiver request, the Agency charged Peter over $10,000 in interest, despite his attempts to return the grant in full.

36.    Peter requested another complete waiver of his service and financial obligation on April 11, 2025. He explained the facts that led to his acceptance of a new position within the same hospital system as his NHSC site and provided all required financial and medical information relating to his request.

37.    The Agency denied Peter's second waiver request in September 2025.

38.    In denying Peter's waiver, the Agency disregarded material facts. It did not consider that Peter continued to work under the same employer and in the same neighborhood, Sunset Park—an NHSC-designated Health Professional Shortage Area. It did not consider that he continued to serve the same underserved population, including several of the same patients. And it did not consider that Peter cannot afford to pay the Agency's penalty.

39.     Instead, the Agency determined only that Peter was physically able to do the work of a Licensed Clinical Social Worker—a finding that never was in contention given his continued service to his community. It wrote:

> We considered the problems of a personal nature that Mr. Flores identified in his waiver request i.e., he was offered and accepted a full-time non-clinical supervisory position at an in-patient hospital, which did not meet the terms of his NHSC LRP contract, but did not find that they intrude on his present and future ability to perform as to raise a presumption that he would be unable to perform his service obligation.

40.     Peter also provided extensive financial information, as the Agency requires. The Agency stated that it "reviewed the financial documents which Mr. Flores submitted." But the Agency disregarded that Peter makes a modest income, has incurred substantial student loan debt, lives in an area with a particularly high cost of living, and cannot possibly pay nearly $75,000 in penalties and the accrued interest on a $25,000 loan he has offered to return in full.

41.     Without considering his personal financial situation, the Agency concluded only that Peter is capable of earning wages as a social worker:

> Based on his current age (40) and current and future earning potential, we believe that he can generate an income for years to come within the profession for which he received NHSC funding. Accordingly, we determined that it would not be an extreme hardship, nor against equity and good conscience, to enforce the terms of his NHSC contract.

42.     While it considered his second waiver request, the Agency charged Peter over $6,400 in interest.

43.     Absent judicial relief, the Agency will levy an extraordinary penalty against Peter: $72,750 in penalties and $28,307 in interest, on top of the roughly $22,427 the Agency calculates as his outstanding service obligation. His current total

payment obligation is $123,484, which continues to accrue interest at the maximum legal rate.

44.    This penalty has no connection to any wrongdoing. Peter did not abandon his commitment for more lucrative work; instead he accepted a promotion and a modest pay raise while continuing to care for the same patients he worked with when he initially qualified for the NHSC grant.

45.    The penalty also subverts the purpose of the NHSC. The NHSC's missions include "[s]trengthening and growing our primary care workforce" and "build[ing] healthy communities by supporting qualified health care providers dedicated to working in areas of the United States with limited access to care." The penalty imposed would punish Peter despite his longstanding and demonstrated commitment to serving his community. And forcing Peter to leave his position would interfere with ability to deliver consistent, quality care to an underserved population.

46.    Peter did nothing wrong. The threatened penalty is grossly excessive.

## CLAIMS FOR RELIEF

### COUNT I: Violation of the Excessive Fines Clause

47.    The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The Excessive Fines Clause thus 'limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense.'" *United States v. Bajakajian*, 524 U.S. 321, 328 (1998) (quoting *Austin v. United States*, 509 U.S. 602, 609–10 (1993)).

48.    The Excessive Fines Clause applies to punitive civil penalties imposed by federal law. *See Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1308 (11th Cir. 2021); *United States ex rel. Bassan v. Omnicare, Inc.*, No. 15 Civ. 4179, 2025 WL 1865202 (S.D.N.Y. July 5, 2025). The touchstone of the Excessive Fines Clause is the imposition of monetary penalties as "punishment for some offense." *Timbs v. Indiana*, 586 U.S. 146, 151 (2019) (quoting *Bajakajian*, 524 U.S. at 327–28).

49.    Treble damages are "essentially punitive in nature." *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 784–86 (2000). Under the Agency's scheme, Peter will be assessed greater than treble damages, which are inherently punitive. *See Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639 (1981) ("The very idea of treble damages reveals an intent to punish past, and deter future, unlawful conduct.").

42    The government suffered no financial loss beyond the $25,000 award, which Peter promptly offered to repay in full. The additional $72,750 in penalties—plus compounding interest—serve no remedial purpose.

43    By threatening to impose punitive damages against Peter—damages that are "grossly disproportional to the gravity of the [individual]'s offense"—the Agency violates the Excessive Fines Clause of the Eighth Amendment. *Bajakajian*, 524 U.S. at 336–37.

50.    Accordingly, the Agency's action should be "h[e]ld unlawful and set aside" as "contrary to constitutional right." 5 U.S.C. § 706(2)(B).

## COUNT II: Violation of the Seventh Amendment

51.     The Seventh Amendment guarantees the right to trial by jury in "all suits which are not of equity or admiralty jurisdiction." *Sec. & Exch. Comm'n v. Jarkesy*, 603 U.S. 109, 122 (2024) (quoting *Parsons v. Bedford*, 28 U.S. 433, 447 (1830)). Actions "designed to punish or deter the wrongdoer rather than solely 'restore the status quo'" are necessarily legal in nature and therefore vest the right to a jury trial. *Id.* at 111 (quoting *Tull v. United States*, 481 U.S. 412, 422 (1987)).

52.     "[T]he remedy is all but dispositive." *Id.* Where, as here, an agency "seeks civil penalties, a form of monetary relief," the agency cannot exact its punishment without providing the process the Seventh Amendment requires. *Id.*

53.     The Agency is not seeking restitution of specific funds wrongfully obtained, nor is it attempting to restore the status quo. Peter offered to return the entire $25,000 award. Instead, the Agency has assessed penalties nearly four times that amount, together with compounded interest. Such relief is quintessentially punitive and designed to deter.

54.     By imposing punitive damages against Peter without a jury trial—and, indeed, without the opportunity to appear before any tribunal at all, the Agency deprived Peter of the process guaranteed by the Seventh Amendment.

55.     The Agency's action should be "h[e]ld unlawful and set aside" as "contrary to constitutional right." 5 U.S.C. § 706(2)(B).

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

1.  Grant preliminary relief to Peter by tolling the effective breach date pending final determination under 5 U.S.C. § 705 ("the reviewing court . . . may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings");

2.  Grant permanent relief to Plaintiff by:

    a.  declaring the imposition of treble damages and additional interest unlawful as applied to Peter and ordering Defendants to accept repayment of the original loan amount from Peter, relieve Peter from his service obligation, and release Peeter from his contract;

    b.  vacating the imposition of penalties unless and until Defendants' claim for damages is resolved by a jury;

3.  Award Plaintiff his costs, disbursements, and reasonable attorneys' fees incurred in bringing this action, pursuant to 28 U.S.C. § 2412.

4.  Grant any further relief the Court deems appropriate.

**[signatures on following page]**

*Complaint*                                                                 13

Respectfully submitted this 11th day of March, 2026.

**VAN KLEY LAW PLLC**

By: /s/ Constance Van Kley
    Constance Van Kley*

P.O. Box 451
Missoula, MT 59806
Phone: (605) 517-0673
constance@vankleylaw.com

**UPPER SEVEN LAW**

By: /s/ Rylee Sommers-Flanagan
    Rylee Sommers-Flanagan*
    K.N. McCleary*

P.O Box 31
Helena, MT 59624
Phone: (406) 396-3373
rylee@uppersevenlaw.com
kn@uppersevenlaw.com

  *Pro Hac Vice forthcoming*

**SLARSKEY LLC**

By:
    Adam D. Hollander
    Luc C. Pierre-Louis

767 Third Avenue
14th Floor
New York, NY 10017
Phone: (646) 893-0482
ahollander@slarskey.com
lpierrelouis@slarskey.com

*Attorneys for Plaintiff Peter Flores*