**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PETER FLORES,

                Plaintiff,

        v.

ROBERT F. KENNEDY, JR.; UNITED STATES
DEPARTMENT OF HEALTH AND HUMAN
SERVICES; THOMAS J. ENGELS; and
HEALTH RESOURCES AND SERVICES
ADMINISTRATION,

                Defendants.

No. 26 Civ. 2019 (ALC)

 

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

 

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2822

ALYSSA B. O'GALLAGHER
Assistant United States Attorney
   -- Of Counsel --

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 2

    I.   Statutory Background ................................................................................................ 2

    II.  Factual Background ................................................................................................... 3

    III. Procedural Background ............................................................................................ 6

LEGAL STANDARD ........................................................................................................... 6

ARGUMENT ....................................................................................................................... 7

    I.   Flores is not likely to succeed on the merits. ........................................................... 7

        A.    Flores is unlikely to succeed on his Eighth Amendment claim. .................................... 7

        B.    Flores is unlikely to succeed on his Seventh Amendment claim because there is no right to a jury trial. ........................................................................................... 11

    II.  Flores is not likely to suffer irreparable harm. ....................................................... 13

    III. The balance of the equities and the public interest do not favor granting Flores a preliminary injunction. ........................................................................................... 15

CONCLUSION.................................................................................................................... 17

Defendants Robert F. Kennedy, Jr., the United States Department of Health and Human Services ("HHS"), Thomas J. Engels, and the Health Resources and Services Administration ("HRSA," and together with Kennedy, HHS, and Engels, the "Government"), by their attorney, Jay Clayton, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in opposition to the motion for a preliminary injunction, Dkt. No. 16 ("Pl. Br."), filed by Plaintiff Peter Flores ("Flores").

## PRELIMINARY STATEMENT

Flores voluntarily entered into a contract with the Government, the terms of which are defined and required by statute, in which he accepted a $25,000 loan repayment award for the purpose of repaying his qualifying student loans.  In exchange, Flores agreed to serve for two years in the half-time clinical practice of his health profession (*i.e.*, as a licensed clinical social worker) at an approved site located in a health professional shortage area ("HPSA") as designated by the Secretary of HHS (the "Secretary").  Flores served 141 days of his 731-day service obligation, and then voluntarily took a different, non-qualifying position at an ineligible site and refused to return to compliance with his service obligation.  Specifically, he took a supervisory role in which he did not provide clinical care as required by the governing statute and his contract; the new position was also at an ineligible site.  He breached his contract by failing to complete his service obligation, and as a result, owes statutory damages to the United States.  He now seeks a preliminary injunction staying debt collection and accrual of interest in an attempt to escape the consequences of his breach.[1]  As set forth below, Flores has not met his burden of demonstrating

---

[1] Flores alternatively argues that Section 705 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 705, is grounds for a stay of debt collection and accrual of interest.  Courts in the Second Circuit apply the same standard to requests for a preliminary injunction and a stay under the APA.  *See New York v. United States Dep't of Educ.*, 477 F. Supp. 3d 279, 294 (S.D.N.Y. 2020) ("The standard for a stay under 5 U.S.C. § 705 is the same as the standard for a preliminary injunction.").  Thus, the same standard applies to Flores' request regardless of how it is construed, and the Government refers to his Section 705 stay request as a request for a preliminary injunction throughout this brief.

entitlement to the extraordinary and drastic preliminary relief that he seeks.  Accordingly, his motion for a preliminary injunction should be denied.

## BACKGROUND

### I.    Statutory Background

Congress established the National Health Service Corps ("NHSC") in 1970 as part of the Emergency Health Personnel Act.  In 1976, Congress established the NHSC Scholarship Program "to address the maldistribution of health care professionals in the United States."  *U.S. v. Citrin*, 972 F.2d 1044, 1046 (9th Cir. 1992) (citing Pub. L. No. 94–484, 90 Stat. 2270 (1976) (codified at 42 U.S.C. §§ 254d–254e)).  The NHSC Scholarship Program provides scholarships to eligible students pursuing certain primary health professional programs in exchange for a service obligation at NHSC-approved sites in HPSAs.

Congress expanded the NHSC in 1987 to include a Loan Repayment Program ("LRP"). *See generally* U.S.C. Title 42, Chapter 6A, Subchapter II, Part D, Subpart III.  The LRP provides loan repayment awards to eligible primary care health professionals in exchange for a service obligation at NHSC-approved sites in HPSAs.  Individuals must apply to the LRP to be considered for a loan repayment award.  42 U.S.C. § 254l-1(b)(3).  "An individual becomes a participant in the [LRP] only upon the Secretary and the individual entering into a written contract described in [42 U.S.C. § 254l-1(f)]."  42 U.S.C. § 254l-1(e); *see also* 42 U.S.C. § 254m(b)(5)(C)(iii), (c).  Among other things, the LRP contract must include "a statement of the damages to which the United States is entitled, under section 254o of this title for the individual's breach of the contract."  42 U.S.C. § 254l-1(f)(4).  To protect the integrity of the LRP, Congress required statutory damages for breach of an LRP contract, *see* 42 U.S.C. §§ 254o(c),[2] (b)(1)(B), limited discharge of damages in bankruptcy,

---

[2] Pursuant to 42 U.S.C. § 254o(c)(1), if for any reason, an individual breaches their NHSC LRP contract by failing to begin or complete their NHSC service obligation, the United States shall be entitled to recover from the individual an amount equal to the sum of: (A) the total of the amounts paid by the United States on behalf of the individual for any period of obligated service not served; (B) an amount equal to the product of the number of months of obligated service that were not completed by the individual, multiplied

*see id.* § 254o(d)(3)(A), and rendered inapplicable any federal or state statute of limitations related to collection of damages, *see id.* § 254o(e). The NHSC is administered by the Bureau of Health Workforce ("BHW"), a part of the HRSA.

LRP participants may provide full-time or half-time service,[3] depending on the terms of their contract. The NHSC statute defines "full-time" service as "a minimum of 40 hours per week in a *clinical practice*, for a minimum of 45 weeks per year" and defines "half-time" service as "a minimum of 20 hours per week (not to exceed 39 hours per week) in a *clinical practice*, for a minimum of 45 weeks per year." 42 U.S.C. §§ 254d(j)(5), (6) (emphases added).

## II.    Factual Background

Flores submitted his application to the LRP on April 21, 2023. *See* Declaration of Antoine Smith ("Smith Decl."), Ex. 1. The HRSA requires all applicants to certify that they have reviewed the Application and Program Guidance ("APG"), which details the service obligation and consequences of breach. *See* Smith Decl., Ex. 2. Flores certified that he read the applicable Fiscal Year 2023 NHSC LRP APG. *See* Smith Decl., Ex. 1 at 21. The APG makes clear that "participants must spend a designated minimum number of hours/weeks providing patient care." *See* Smith Decl., Ex. 2 at 35. It also makes clear that inpatient hospitals (except for Critical Access Hospitals or Indian Health Services hospitals) are not eligible NHSC service sites. *Id.* at 29. Flores accepted an LRP award and executed the NHSC LRP contract on August 2, 2023. *See* Dkt. No. 17-1 at 5. The Secretary countersigned Flores' contract on September 22, 2023. *Id.* Flores received his $25,000.00 award on December 19, 2023. *See* Dkt. No. 17 ¶ 7.

---

by $7,500; and (C) interest on the amounts described in (A) and (B) at the maximum legal prevailing rate, as determined by the Treasurer of the United States, from the date of the breach, except that the amount the United States is entitled to recover shall not be less than $31,000.

[3] If an individual who is performing half-time service "fails to begin or complete the period of obligated service, the method stated in 254o(c) of this title for determining the damages for breach of the individual's written contract will be used after converting periods of obligated service or of service performed into their full-time equivalents." 42 U.S.C. § 254d(i)(2)(F).

3

Flores' acceptance letter (Participant Award Notification) and the contract both specifically referenced the service obligation as described in the APG. *See* Smith Decl., Ex. 3 ("This NHSC contract obligates you to **2** consecutive years of clinical service as a health professional, from **September 22, 2023** through **September 21, 2025** at the NHSC-approved site(s) that you verified and confirmed with the acceptance of your award."); Dkt. No. 17-1. Per the contract, Flores agreed to serve for two years in "half-time clinical practice," which is defined as a minimum of 20 hours per week at the approved site. *See* Dkt. No. 17-1 § B(1)(b)(i). Significantly, for "half-time behavioral and mental health providers, at least 10 of the minimum 20 hours/week *must be spent providing patient care at the approved service site*. . . . The remaining 10 hours/week may be spent *providing patient care at the approved service site* or performing service as a behavioral or mental health professional in schools or other community-based settings when directed by the approved site." *Id.* § B(1)(b)(v) (emphases added); *see also* 42 U.S.C. § 254m(a) ("[E]ach individual who has entered into a written contract with the Secretary under [the NHSC LRP] shall provide service in the . . . *clinical practice* of such individual's profession . . . ." (emphasis added)).

Flores was working as a licensed clinical social worker at the Sunset Park - Sunset Terrace Family Health Center at NYU Langone when he applied for and accepted the $25,000 LRP award. *See* Dkt. No. 17 ¶¶ 5–6; Dkt. No. 17-3 at 1. Flores' last day of work providing direct patient care was February 9, 2024. Dkt. No. 17-3 at 1. Thus, Flores served 141 days of his 731-day service obligation. *Id.*

Prior to February 9, 2024, Flores contacted a BHW analyst about his new, non-clinical position at an in-patient hospital. On January 11, 2024, Flores inquired about terminating his contract because he was transitioning to a "non clinical" role and would be "moving to a non FQHC, inpatient hospital site beginning Feb[ruary] 11, 2024." Smith Decl., Ex. 4. Flores was advised that he was outside the statutory

4

period to terminate his contract,[4] and he was reminded of the mandatory statutory damages for breach of contract. *Id.* Additionally, on February 5, 2024, Flores wrote to the NHSC and confirmed in writing that he "underst[ood]" that accepting a new position "does not qualify for the [LRP]," and he sought clarification on the waiver application because "the options provided don't entirely seem to apply to my situation." Smith Decl., Ex. 5.[5]

Flores requested a waiver of his service obligation in February 2024. Dkt. No. 17-2. The HRSA denied Flores' waiver request on November 18, 2024, because the request did not meet the statutory and regulatory criteria for a waiver. *See id.* Flores made a second request for a waiver on April 11, 2025. Dkt. No. 17-3. The HRSA again denied Flores' second request in September 2025 because he did not meet the statutory and regulatory criteria for a waiver. *See id.*

There is no dispute that Flores breached his NHSC LRP contract by failing to complete his two-year service obligation of half-time clinical care at an NHSC-approved site in an HPSA. *See, e.g.*, Pl. Br.

---

[4] For contracts entered into in fiscal year 2023, the year Flores' contract was executed, the Consolidated Appropriations Act, 2023, PL 117-328, December 29, 2022, 136 Stat. 4461, 4879, provides the statutory period for terminations: "In lieu of the timeframe specified in section 338E(c)(2) of the PHS Act, terminations described in such section may occur up to 60 days after the effective date of a contract awarded in fiscal year 2023 under section 338B of such Act, or at any time if the individual who has been awarded such contract has not received funds due under the contract." *See also* 42 U.S.C § 254o(c)(2).

[5] The LRP may waive a service or payment obligation when compliance by the LRP participant is "impossible or would involve extreme hardship to the individual and if enforcement of such obligation with respect to any individual would be unconscionable." 42 U.S.C. § 254o(d)(2). Compliance would be considered impossible if the Secretary determines, on the basis of information and documentation submitted, that an NHSC participant "suffers from a physical or mental disability that results in the permanent inability to perform the service or other activities that would be necessary to comply" with the participant's NHSC LRP obligation. 42 C.F.R. §§ 62.12(c), 62.28. In determining whether compliance with the obligation would be an extreme hardship and unconscionable, the regulations require the Secretary to consider (1) the participant's present financial resources and obligations; (2) the participant's estimated future financial resources and obligations; and (3) the extent to which the participant has problems of a personal nature, such as a physical or mental disability or terminal illness in the immediate family, which so intrude on their present and future ability to perform as to raise a presumption that they would be unable to perform the obligation incurred. 42 C.F.R. §§ 62.12(d), 62.28.

at 14.  As such, statutory damages were properly assessed.  *See* 42 U.S.C. § 254o(c)(1).  Therefore, BHW's Division of Participant Support and Compliance processed Flores' default, meaning it verified that Flores breached his contract, calculated the statutory damages he owed, and then referred his case to HHS's Debt Collection Center to administratively establish the debt and collections account.  *See, e.g.*, Dkt. No. 17-4. The statutory damages noted above must be paid in accordance with 42 U.S.C. § 254o(b)(1)(B): "[a]ny amount of damages that the United States is entitled to recover under . . . [42 U.S.C. § 254o(c)] *shall*, within the 1-year period beginning on the date of the breach of the written contract (or such longer period beginning on such date as specified by the Secretary), be paid to the United States."  42 U.S.C. § 254o(b)(1)(B)(i) (emphasis added).  If those damages "are delinquent for 3 months, the Secretary *shall*, for the purpose of recovering such damages" utilize collection agencies and "*shall* disclose to all appropriate credit reporting agencies information relating to damages of more than $100 . . . that are delinquent by more than 60 days or such longer period as is determined by the Secretary."  42 U.S.C. §§ 254o(b)(1)(B)(ii), (iv) (emphases added).

### III.    Procedural Background

Flores filed this action on March 11, 2026, over two years after he first contacted BHW about accepting a non-qualifying position, a year and a half after the HRSA denied his first waiver request, and six months after the HRSA denied his second waiver request.  *See supra* Background, Section II.  In his complaint, he alleges that the statutory damages imposed for the breach of his LRP contract are unlawful. *See generally* Dkt. No. 6.  On April 24, 2026, Flores filed the motion for a preliminary injunction now before the Court, seeking an order enjoining the Government from collecting the alleged debt from or assessing additional interest, penalties, or fees against him pending final adjudication of this action.  *See* Dkt. Nos. 15–19.

### LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat'l*

*Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). It is "one of the most drastic tools in the arsenal of judicial remedies," and "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citation omitted). To demonstrate entitlement to this "extraordinary and drastic remedy," *id.*, a movant must clearly demonstrate: "(1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, [] (3) public interest weighing in favor of granting the injunction," and (4) "that the balance of equities tips in his or her favor," *A.H. by & through Hester v. French*, 985 F.3d 165, 176 (2d Cir. 2021) (internal quotation marks and citations omitted). Where, as here, a movant seeks "to modify the status quo by virtue of a 'mandatory preliminary injunction' (as opposed to seeking a 'prohibitory preliminary injunction' to maintain the status quo)," the "standard for obtaining preliminary injunctive relief is higher." *A.H.*, 985 F.3d at 176 (quoting *Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020)). In that case, "the movant must . . . make a *strong* showing of irreparable harm and demonstrate a *clear or substantial* likelihood of success on the merits." *Id.* (emphasis added; internal quotation marks and citations omitted).

## ARGUMENT

Flores is not entitled to the extraordinary and drastic remedy of preliminary relief because he cannot meet his burden of proof as to any of the *Winter* factors.

### I.    Flores is not likely to succeed on the merits.

Flores' complaint advances two claims: that the statutory damages assessed pursuant to the LRP statute upon breach (1) are unconstitutional under the Eighth Amendment and (2) were imposed without a jury trial in violation of the Seventh Amendment. *See* Pl. Br. at 8–13. Flores is not likely to succeed on either claim.

### A.    Flores is unlikely to succeed on his Eighth Amendment claim.

Courts apply "a two-step inquiry for determining whether a financial penalty[6] is excessive under

---

[6] The Government does not concede that NHSC statutory damages are a penalty.

the Eighth Amendment." *United States v. Viloski*, 814 F.3d 104, 108 (2d Cir. 2016). First, the Court must

determine whether the "Excessive Fines Clause applies at all." *Id.* at 109. This step of the inquiry focuses

on whether the fine "may be characterized, at least in part, as 'punitive.'" *Id.* Second, if the fine may be

characterized as punitive, the Court must determine whether it is "unconstitutionally excessive." *Id.* To

"resolve that question," the Second Circuit "draw[s] on the four so-called '*Bajakajian* factors' set forth in

*United States v. Bajakajian*, 524 U.S. 321 (1998)." *Reese v. Triborough Bridge & Tunnel Auth.*, 91 F.4th

582, 589 (2d Cir. 2024). These factors, though not exhaustive, include:

> (1) the essence of the crime of the defendant and its relation to other criminal activity, (2) whether the defendant fits into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the defendant's conduct.

*Id.* (quoting *United States v. George*, 779 F.3d 113, 122 (2d Cir. 2015)). The excessiveness analysis

"involves *solely* a proportionality determination," and a court may "invalidate [the challenged fine] only

if it is *grossly* disproportional to the gravity of the . . . offense." *Viloski*, 814 F.3d at 111, 113 (internal

quotation marks omitted) (quoting *Bajakajian*, 524 U.S. at 333–34, 337).

Even if the statutory damages at issue here may be characterized as punitive, which the

Government does not concede, they are not unconstitutionally excessive. With respect to the first factor,

courts consider whether the fines were incurred "with[] the knowledge" that the individual was in violation

of the relevant rule. *Farina v. Metro. Transportation Auth.*, 409 F. Supp. 3d 173, 202 (S.D.N.Y. 2019)

(concluding that a lack of knowledge weighed in favor of finding that fines are disproportionate to the

offense); *accord Viloski*, 814 F.3d at 113 (concluding that willful participation in conspiracy weighed

against a finding that fines are disproportionate to the offense); *George*, 779 F.3d at 123 (similar). Here,

Flores has known since before he applied to the LRP (per the APG) that a non-clinical position and/or

employment at a site that is not NHSC-approved would not qualify for the LRP, and he further knew in

January 2024 that he was moving to a non-clinical position at an ineligible site. *See supra* Background,

Section II.  But interest did not begin to accrue on his LRP award until February 2024.  *See* Pl. Br. at 5.  Accordingly, Flores has known for the *entirety of the time* that damages, including interest, have been accruing—more than two years—that his new position did not qualify for the LRP, and he made only minimal effort during that time to move back into a qualifying position.  *See* Dkt. No. 17 ¶ 15 (noting only that Flores "tried to return to [his] prior role, but it had already been filled").  Given his longstanding knowledge that he is in breach of his LRP contract, this factor weighs against a finding that the statutory damages are disproportionate to the offense.

With respect to the second factor, there is no question that Flores "falls squarely within the class of persons whose conduct the statute is intended to regulate."  *United States v. Castello*, 611 F.3d 116, 122 (2d Cir. 2010).  Indeed, as an LRP award recipient who entered into an LRP contract, he is clearly subject to congressionally required statutory damages for breach of that contract.  *See* 42 U.S.C. § 254o.  "Hence, this is not an instance in which a person was fined pursuant to a statute or regulation intended to affect a different category of activity or person," and this factor, too, "weighs against [a finding] of disproportionality."  *Farina*, 409 F. Supp. 3d at 202.

With respect to the third factor, the Second Circuit has stated on multiple occasions that "if the value of [the fine] is within the range of fines prescribed by Congress, a strong presumption arises that [it] is constitutional."  *United States v. Varrone*, 554 F.3d 327, 332 (2d Cir. 2009) (alteration, citation, and internal quotation marks omitted); *cf. id.* ("[F]orfeiture far in excess of the statutory fine range is likely to violate the Excessive Fines Clause." (alteration, citation, and internal quotation marks omitted)); *see also Viloski*, 814 F.3d at 114; *Reese*, 91 F.4th at 591 ("[J]udgments about the appropriate punishment for an offense belong in the first instance to the legislature.").  As discussed above, the damages amount assessed here is determined by the statutory formula in 42 U.S.C. § 254o(c), and "[t]here is no indication in the statute that a court has discretion to award a lesser amount of damages than that provided in the statute."  *U.S. v. Duffy*, 879 F.2d 192, 198 (6th Cir. 1989).  Thus, because the damages amount Flores owes is

explicitly prescribed by Congress, this factor also weighs against a finding of disproportionality.

Finally, with respect to the fourth factor, "courts 'should grant substantial deference' to the legislature," *Farina*, 409 F. Supp. 3d at 202, and the magnitude of damages mandated by statute here, *see* 42 U.S.C. § 254o(c)(1), "suggests that Congress did not view the . . . offense as a trivial one," *Castello*, 611 F.3d at 123 (alteration, citation, and internal quotation marks omitted); *see also Viloski*, 814 F.3d at 114 (noting that a large statutory maximum fine "suggest[ed] that Congress did not view offenses like the defendant's as trivial" and "weigh[ed] strongly in favor of the [fine's] constitutionality"). Moreover, the clear statutory purpose of the LRP is to "bring about a public policy goal, namely, the provision of medical services to underserved areas." *U.S. v. Vanhorn*, 20 F.3d 104, 111 (4th Cir. 1994). "It would be difficult" for the HRSA to "successfully" provide medical services to the underserved "if it were unable to deter" medical providers from accepting non-qualifying positions and failing to fulfill their service obligations. *Reese*, 91 F.4th at 593. The statutory damages thus help the HRSA "prevent" the public health "harms that it would suffer if its" LRP had a toothless enforcement mechanism. *Id.* at 593–94.

Flores attempts to minimize this harm by arguing that all he did was "br[eak] a service agreement that limited . . . his employment." Pl. Br. at 10. But this argument takes too myopic a view of the harm at issue. Indeed, the harm is not just to the government—the other party to Flores' "service agreement." Rather, it is also to the individuals whose ability to secure primary health care is hampered when LRP award recipients, like Flores, move into positions that do not provide clinical care. *See Duffy*, 879 F.2d at 198 ("It is clear from the legislative history that Congress' purpose behind the scholarship program was to encourage medical students to set up practice in areas that have traditionally been deprived of access to adequate medical services. Congress was not simply providing medical students with a means of financing their medical education."). Multiple courts have concluded that where, as here, harms flow to third parties, this final factor weighs against a finding of disproportionality. *See Castello*, 611 F.3d at 124; *George*,

10

779 F.3d at 124.[7]

Accordingly, all of the factors courts typically consider in making a proportionality determination weigh against a finding that the statutory damages at issue are unconstitutionally excessive. This conclusion is bolstered by the fact that numerous courts have considered challenges to the LRP's statutory damages over the last several decades and "have routinely upheld the damages provision . . . even where the resulting damages were substantial." *Blalock v. HHS*, No. 24 Civ. 1637 (JRR), 2025 WL 3496184, at *10 (D. Md. Dec. 5, 2025) (collecting cases)*; see also U.S. v. Hugelmeyer*, 774 F. Supp. 559, 562 (D. Ariz. 1991) (noting that "all courts that have considered the issue of whether the damages provision is a penalty or unconscionable have rejected those contentions and found the provision enforceable").

For these reasons, Flores is unlikely to succeed on his Eighth Amendment claim.

**B.    Flores is unlikely to succeed on his Seventh Amendment claim because there is no right to a jury trial.**

Flores relies almost entirely on *SEC v. Jarkesy,* 603 U.S. 109 (2024), in arguing that the statutory damages assessed by the HRSA violate the Seventh Amendment because he was not afforded a jury determination before liability was imposed. *See* Pl. Br. at 12–13. But as the Supreme Court made clear in that case, *Jarkesy* "pose[d] a straightforward question: whether the Seventh Amendment entitles a defendant to a jury trial when the SEC seeks civil penalties against him for securities fraud.*" Jarkesy,* 603 U.S. at 120. Because this case does not involve *civil penalties* sought by the *SEC* for *securities fraud*, *Jarkesy* is inapposite. But to the extent *Jarkesy* bears any relevance to this case, it hurts rather than helps Flores' position. Indeed, as *Jarkesy* recognizes, "Congress may assign [a] matter for decision to an agency without a jury, consistent with the Seventh Amendment" where the "public rights" exception applies. *Id.* at 127. That exception is implicated where, *inter alia*, "the granting of public benefits such as payments"

---

[7] Flores also attempts to minimize the harm by arguing that he is "providing substantially similar services to the same community." Pl. Br. at 11. But, as he admits, he is no longer providing *clinical care*.

is at issue. *Id.* at 130.

Even assuming the Seventh Amendment extends to Flores' breach of the LRP contract, which the Government does not concede, the "public rights" exception undoubtedly applies here, such that Flores is not entitled to a jury trial before statutory damages can be assessed. Indeed, multiple courts have concluded that the Seventh Amendment does not apply where an agency grants federal funds—a public benefit—to a recipient, attaches conditions to the grant of those funds, and then subsequently takes enforcement action against the recipient when those conditions are violated. *See, e.g.*, *NCRNC, LLC v. Kennedy*, No. 25 Civ. 607 (MAD), 2026 WL 145591, at *4–5 (N.D.N.Y. Jan. 20, 2026), *appeal docketed*, No. 26-694 (2d Cir. Mar. 20, 2026); *Wells v. Loeffler*, No. 24-3946, 2026 WL 555065, at *3 (9th Cir. Feb. 27, 2026) (Collins, J., concurring); *Fagan v. HHS*, No. 23 Civ. 2095 (TJS), 2025 WL 1837402, at *13–15 (D. Md. July 2, 2025).

*NCRNC* is particularly instructive. There, HHS imposed a monetary penalty on the plaintiff nursing home, which received federal funds as a Medicare participant, for its alleged noncompliance with the federal requirements for Medicare participation. *NCRNC*, 2026 WL 145591, at *1. The plaintiff argued that the imposition of this penalty without a jury trial violated the Seventh Amendment. *See id.* But the court concluded that the "public rights" exception applied, explaining that "the at-issue conduct is best characterized as a monetary penalty in response to noncompliance with requirements to receive federal funding: a transaction between the government and a private party, whereby the private party receives public funds, as long as it complies with the conditions of participation." *Id.* at *5.

So too here. As explained above, *see supra* Background, Section II, Flores certified that he reviewed the APG, which detailed the service obligation for receiving an LRP award, as well as the consequences of breach. He then accepted the LRP award and executed an LRP contract, which specifically referenced the service obligation as described in the APG. After Flores moved into a non-qualifying position before satisfying his service obligation, the HRSA assessed statutory damages for his

12

noncompliance with the requirements to receive an LRP award. Flores' "acquiescence to [the APG's] conditions in connection with [the HRSA] having granted public benefits to [him] . . . brings this case comfortably within the 'public rights' exception as described in *Jarkesy*." *Wells*, 2026 WL 555065, at *3 (alterations and internal quotation marks omitted). Accordingly, Flores has no entitlement to a jury trial and thus his Seventh Amendment claim is not likely to succeed on the merits.[8]

## II.    Flores is not likely to suffer irreparable harm.

Flores has also failed to demonstrate that he would suffer irreparable harm in the absence of a preliminary injunction.  A plaintiff seeking preliminary injunctive relief must "demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley Transp. Malmo AB v. Wabtec Corp.,* 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)).  "The movant is required to establish not a mere *possibility* of irreparable harm, but that it is '*likely* to suffer irreparable harm if equitable relief is denied.'" *Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525, 531 (S.D.N.Y. 2004) (quoting *JSG Trading Corp. v. Tray–Wrap, Inc.,* 917 F.2d 75, 79 (2d Cir. 1990)).  "As a general matter, economic harm is rarely irreparable."  *Lost Lake Holdings LLC v. Town of Forestburgh*, No. 22 Civ. 10656 (VB), 2023 WL 8947154, at *8 (S.D.N.Y. Dec. 28, 2023).

Flores identifies three harms he will suffer in the absence of an injunction: (1) financial strain and (2) effects on his credit that he claims will result from collection efforts, Pl. Br. at 15–16, and (3) increased interest, *id.* at 16.  None is irreparable.  With respect to the first of these harms, courts have found economic

---

[8] Flores' Seventh Amendment claim also fails for an independent reason: there are no disputed facts for a jury to resolve.  As the Second Circuit has recognized, "the right to a jury trial exists only with respect to disputed issues of fact," *Clark v. Hanley*, 89 F.4th 78, 100 (2d Cir. 2023), but there are none here.  Indeed, Flores admits that he breached the LRP agreement, *see* Smith Decl., Ex. 5 (confirming in writing that he "underst[ood]" that accepting a new position "does not qualify for the [LRP]"); *see also* Pl. Br. at 14, and the damages for such breach are prescribed by statute, *see* 42 U.S.C. § 254o(c)(1).

harm to be irreparable only under "special circumstances," including where the "potential economic loss is so great" as to be financially ruinous. *See Lost Lake Holdings*, 2023 WL 8947154, at *8 (noting that courts have found economic harm to be irreparable where "the potential economic loss is so great it threatens to put a party out of business"). But Flores does not provide *any* evidence demonstrating that collection efforts would have so great an effect on his financial stability—let alone that such effect would be "imminent," as is required to be irreparable. Flores' unsupported speculation that he would suffer financial strain is insufficient to establish irreparable harm.

With respect to the second of these harms, Flores similarly fails to provide any specific evidence of how collection efforts would negatively affect his credit—or how such negative effects would imminently affect his "ability to secure housing, a vehicle, obtain credit, and invest in his future." Pl. Br. at 15. Courts have frequently found irreparable harm lacking where, as here, a movant cited negative effects on credit but "fail[ed] to describe any potential harm in any detail, provide any factual allegations in support of his claim, or include any supporting evidence." *Williams v. Cap. One, N.A.*, No. 25 Civ. 980 (KES) (EPG), 2025 WL 2388683, at *2 (E.D. Cal. Aug. 18, 2025), *report and recommendation adopted*, 2025 WL 3004160 (E.D. Cal. Oct. 27, 2025); *see also Kameir v. Experian Information Solutions*, No. 26 Civ. 895 (JWH), 2026 WL 1182199, at *2 (C.D. Cal. Apr. 23, 2026); *McPartland v. Chase Manhattan Bank USA, N.A.*, No. 22 Civ. 284 (SHR), 2022 WL 1406921, at *2 (M.D. Pa. May 4, 2022). This Court should do the same.

Finally, with respect to the third harm, Flores does not demonstrate that it "cannot be remedied if [the] court waits until the end of trial to resolve the harm." *Faiveley*, 559 F.3d at 118 (quoting *Grand River*, 481 F.3d at 66). Indeed, as another court recently concluded when it found irreparable harm lacking in a case presenting substantially similar allegations to Flores', "[t]he accrual of interest on the grant principal during the pendency of the litigation . . . could be appropriately addressed in a final decision on the merits." *Johnson v. Becerra*, No. 22 Civ. 55 (BMM), 2022 WL 16921542, at *4 (D. Mont. Nov. 14,

14

2022). Thus, Flores has not demonstrated that he will suffer any actual, imminent, non-speculative irreparable harm in the absence of an injunction.

But even if he had, any claim of irreparable harm would be undercut by Flores' delay in filing this suit and moving for preliminary relief. "A district court should generally consider [a litigant's] delay in assessing irreparable harm," *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 39 (2d Cir. 1995), as delay typically has an "undercutting effect . . . on [a] claim of irreparable harm," *Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2d Cir. 1985). Although there is no bright-line rule, "courts in this Circuit 'typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months.'" *Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.*, No. 21 Civ. 38 (MKV), 2021 WL 535485, at *6 (S.D.N.Y. Feb. 12, 2021) (citation omitted). "[A] plaintiff's delay in commencing a lawsuit seeking protection of his constitutional rights tends to negate a finding of immediate and irreparable harm necessary for the issuance of a preliminary injunction." *Wallikas v. Harder*, 78 F. Supp. 2d 36, 42 (N.D.N.Y. 1999); *Carter v. Sewell*, No. 23 Civ. 1139 (JLR), 2023 WL 7164304, *1 (S.D.N.Y. Oct. 31, 2023); *Omnistone Corp. v. Cuomo*, 485 F. Supp. 3d 365, 367, 369 (E.D.N.Y. 2020).

Here, Flores did not file suit until over two years after he first contacted BHW about accepting a non-qualifying position, a year and a half after the HRSA denied his first waiver request, and six months after the HRSA denied his second waiver request. *See supra* Background, Section II. And even after filing the complaint in this action, he waited an additional six weeks before moving for preliminary relief. *See* Dkt. Nos. 1, 15. These unexplained delays would undercut any showing of irreparable harm had Flores made one (which he has not).

### III. The balance of the equities and the public interest do not favor granting Flores a preliminary injunction.

Finally, the balance of the equities and the public interest weigh against granting a preliminary injunction. When the United States is the opposing party, the analysis of these factors merges. *Nken v.*

*Holder*, 556 U.S. 418, 435 (2009).  Congress established the NHSC Scholarship and Loan Repayment Programs "to address the maldistribution of health care professionals in the United States."  *Citrin*, 972 F.2d at 1046 (citation omitted); *see also Vanhorn*, 20 F.3d at 111 (The NHSC aims to "bring about a public policy goal, namely, the provision of medical services to underserved areas.").  These programs currently support more than 18,500 primary care medical, dental, and behavioral health providers providing quality health care in communities with significant health professional shortages.[9]  The HRSA and NHSC thus serve the public interest by incentivizing primary care health providers to lend their services in medically underserved areas.

Should the Court grant the requested preliminary relief, the NHSC would lose some of its ability to incentivize such services, with trickle-down effects flowing to underserved areas.  By contrast, if preliminary relief is denied and Flores is held to his LRP contract, he will face nothing more (or less) than the congressionally prescribed burdens he agreed to when he applied for and accepted the LRP award.

To be clear, Flores received $25,000 in loan repayment in exchange for his commitment to provide two years of clinical practice in an underserved area, in accordance with the NHSC statutes and regulations and the terms of his contract.  And if he failed for any reason to complete his service obligation, he agreed to pay to the United States the statutory damages for such breach.  The equities favor holding Flores to that requirement.

Flores attempts to resist this conclusion by again taking too myopic a view of the harm at issue, arguing that the HRSA would only lose interest if preliminary relief were granted.  Pl. Br. at 17.  But, when considering Flores' request, the Court must consider "the public consequences in employing the extraordinary remedy of injunction."  *Yang*, 960 F.3d at 136 (citation and internal quotation marks omitted).  Flores neglects to consider any public consequences—including the defanging of the NHSC's

---

[9] General information related to the NHSC can be found on the HRSA's website: https://nhsc.hrsa.gov/.

incentive structure and concomitant harms to the underserved that would result—and instead focuses solely on his individual consequences. When the lens is widened, the public interest and the balance of equities clearly tip in favor of the Government and against entry of preliminary relief.

## CONCLUSION

For the foregoing reasons, the Court should deny Flores' motion for a preliminary injunction.

Dated: New York, New York
        May 15, 2026

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York
*Attorney for Defendants*

By:    */s/ Alyssa B. O'Gallagher*
       ALYSSA B. O'GALLAGHER
       Assistant United States Attorney
       86 Chambers Street, 3rd Floor
       New York, New York 10007
       Tel: (212) 637-2822
       Email: alyssa.o'gallagher@usdoj.gov

17

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the undersigned counsel hereby certifies that, measured by the word processing program used to prepare this brief, this brief complies with the word-count limitation of the rule, which is a maximum of 8,750. Excluding the caption, table of contents, table of authorities, signature blocks, and any required certificates, but including material contained in footnotes or endnotes, there are 6,225 words in this brief.

Dated: New York, New York
      May 15, 2026

                        */s/ Alyssa B. O'Gallagher*
                        ALYSSA B. O'GALLAGHER
                        Assistant United States Attorney