Constance Van Kley*
  Van Kley Law PLLC
  P.O. Box 451
  Missoula, MT 59806
  (605) 517-0673
  constance@vankleylaw.com

Rylee Sommers-Flanagan*
K.N. McCleary
  Upper Seven Law
  P.O. Box 31
  Helena, MT 59624
  (406) 998-6067
  rylee@uppersevenlaw.com
  kn@uppersevenlaw.com

Adam D. Hollander
Luc C. Pierre-Louis
  Slarskey LLC
  767 Third Avenue
  14th Floor
  New York, NY 10017
  (646) 893-0482
  ahollander@slarskey.com
  lpierrelouis@slarskey.com

*Attorneys for Plaintiff*
*\* Pro Hac Vice forthcoming*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETER FLORES, <br><br>      *Plaintiff,* <br><br>    vs. <br><br> ROBERT F. KENNEDY, JR., *et al.,* <br><br>      *Defendants.* | No. 1:26-cv-02019-ALC <br><br> **Reply Memorandum of Law in Support of Motion to Stay Agency Decision or, in the Alternative, for a Preliminary Injunction** |

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................. i

TABLE OF AUTHORITIES.............................................................................ii

INTRODUCTION...................................................................................... 1

ARGUMENT............................................................................................. 1

    I.   Peter is likely to succeed on the merits of his constitutional claims 2

       A.  The penalties violate the Excessive Fines Clause........................ 2

       B.  The penalties violate the Seventh Amendment ........................... 6

    II.  Peter is likely to suffer irreparable harm ........................................ 8

    III.The balance of the equities and public interest favor Peter.......... 10

CONCLUSION ....................................................................................... 10

CERTIFICATE OF COMPLIANCE ....................................................... 11

## TABLE OF AUTHORITIES

### Cases

*A.H. v. French,*
    985 F.3d 165 (2d Cir. 2021) ………………………………….…..2

*Dairy Queen, Inc. v. Wood,*
    369 U.S. 469 (1962)………………………………………….…..8

*Fagan v. HHS,*
    2025 WL 1837402 (D. Md. July 2, 2025)……………………….…..7

*Farina v. Metro. Transportation Auth.,*
    409 F. Supp. 3d 173 (S.D.N.Y. 2019)…..…………………….......3

*Gov't Emps. Ins. Co. v. Patel,*
    166 F.4th 280 (2d Cir. 2026)…..……………….………….........2

*Guirola-Beeche v. Dep't of Justice,*
    662 F. Supp. 1414 (S.D. Fla 1987)…..………….…..……...........10

*Johnson v. Becerra,*
    674 F.Supp. 3d 949 (D. Mont. 2023)…..……………….….….....6

*Mastrio v. Sebelius,*
    768 F.3d 116 (2d Cir. 2014) …..………………….……….........2

*NCRNC, LLC v. Kennedy,*
    No. 1:2-cv-00607, 2026 WL 145591 (N.D.N.Y. Jan 20, 2026)…........7

*Nken v. Holder,*
    556 U.S. 418 (2009)…..………………………….………….......10

*Reese v. Triborough Bridge & Tunnel Auth.,*
    91 F.4th 582 (2d Cir. 2024)…..……………………….……........4, 5

*Regeneron Pharms., Inc. v. U.S. Dep't of Health & Hum. Servs.,*
    510 F. Supp. 3d 29 (S.D.N.Y 2020)……………………………………………8

*SEC v. Jarkesy,*
    603 U.S. 109 (2024)……………………………………......................6, 7, 8

*Tough Traveler Ltd. v. Outbound Prods.,*
    60 F.3d 964 (2d Cir. 1995)……………………………………………………9

*Tull v. United States,*
    481 U.S. 412 (1987)…………………………………………………………7

*Trustco Bank, Nat. Ass'n v. Glens Falls Nat. Bank & Tr. Co.,*
    903 F. Supp. 335 (N.D.N.Y 1995)…………………………………………9

*United States v. Bajakajian,*
    524 U.S. 321 (1998)………………….....………………………....*passim*

*United States v. Castello,*
    611 F.3d 116 (2d Cir. 2010)……………….....……….....................3

*United States v. George,*
    779 F.3d 113 (2d Cir. 2015)….....………………………………………3

*United States v. Melendez,*
    994 F.2d 216 (5th Cir. 1991)…....………………………...................2

*United States v. Varrone,*
    554 F.3d 327 (2d Cir. 2009)…....………………………...................4

*United States v. Viloski,*
    814 F.3d 104 (2d Cir. 2016)…....………………………………………3

*Wells v. Loeffler,*
    No. 24-3946, 2026 Wl 555065 (9th Cir. Feb. 27, 2026)…….....……7

## Statutes

5 U.S.C § 705 ........................................................................................ 1

5 U.S.C § 702 ........................................................................................ 9

18 U.S.C § 641 ...................................................................................... 5

18 U.S.C § 3571(d) ............................................................................... 5

42 U.S.C § 254 *o*(b) ......................................................................... 2, 7

42 U.S.C § 254 *o*(d)(2)......................................................................... 5

## Other Authorities

133 Cong. Rec. H23617–23618 (Sept. 9, 1987) ................................... 3, 4

U.S.S.G § 5E1.2 .................................................................................... 5

## Constitutional Provisions

U.S. Const. Amend. VII.......................................................................... 11

U.S. Const. Amend. VIII ...................................................................... 1, 5

Defendants ("the Agency") offered Plaintiff Peter Flores a $25,000 loan repayment grant to incentivize his part-time work in a clinical practice for two years. When Peter was promoted, he tried to return the grant in full. The Agency refused, punishing him by requiring him to pay over $118,000. Seven days after Peter filed suit, the Agency initiated collections on the alleged debt, threatening additional financial consequences if he does not pay in full while his case is pending.

The Eighth Amendment requires that penalties bear some relationship to the gravity of an alleged offense. Peter accepted his grant in good faith and sought to return it promptly. Greater than treble damages bear no relationship to this "offense," thus Peter is likely to succeed on the merits of his claims.

Because the Agency initiated collections and continues to assess interest, Peter faces imminent irreparable injury. Even if he wins, Peter may suffer years of additional coercive financial punishment, including garnished wages and tax refunds, as well as irrefutable harm to his credit. And if he loses, Peter will face a significant financial penalty in the form of compounded interest that continues to accrue, simply for seeking to enforce his constitutional rights. Pausing collections and interest for Peter during the pendency of his case has no impact on the Agency's ability to incentivize or enforce other NHSC grant agreements. Instead, an injunction maintains the status quo while this Court resolves Peter's claims.

## ARGUMENT

To obtain either a preliminary injunction or a stay under 5 U.S.C. § 705, Peter must establish a likelihood of success on the merits, irreparable harm, and that the

*Reply in Support of Motion to Stay &*
*Alternative Motion for Preliminary Injunction*

1

balance of the equities and public interest tip in his favor. *Gov't Emps. Ins. Co. v. Patel*, 166 F.4th 280, 290–91 (2d Cir. 2026).[1]

## I.    Peter is likely to succeed on the merits of his constitutional claims.

### A.    The penalties violate the Excessive Fines Clause.

The Agency does not dispute that the challenged fines are punitive. Agency Opp., 7 n.6, 8 (arguing only that the fines are not excessive). Thus, Peter is likely to show that the greater-than-treble damages the Agency seeks are punitive. Pl. Mem. in Supp. of Mot. for Stay or, in the Alt., Prelim. Inj., ECF 16, 8–10 ("Pl. Mem."); *see, e.g., United States v. Citrin*, 972 F.2d 1044, 1051 (9th Cir. 1992) (42 U.S.C. § 254*o*(b)(1)(A) creates "a statutorily prescribed penalty"); *United States v. Melendez*, 944 F.2d 216, 219 (5th Cir. 1991) (describing "the punitive nature" of Section 254*o*(b)'s "liquidated damage provision"). The only question is whether Peter is likely to show the penalties are excessive. He is.

The Agency asserts that the first factor—the degree of criminality involved—weighs against Peter because he accepted a promotion knowing his new role would not qualify. Agency Opp., 8–9. But Peter accepted the grant in good faith—he believed he would complete his service term, but his employer rewarded his good work with a

---

[1] The Agency asserts that Peter seeks a "mandatory" injunction and thus is subject to a heightened standard. Defs' Mem. of Law in Opp'n to Mot. for Stay or, in the Alt., Prelim. Inj., 7 ("Agency Opp."). But Peter asks only that the Agency refrain from certain actions to ensure that Peter's alleged obligations will remain as they stood when he filed suit. This is a prohibitory injunction. *Cf. A.H. v. French*, 985 F.3d 165, 176 (2d Cir. 2021) (prohibitory injunctions restore the parties to "the last actual, peaceable uncontested status which preceded the pending controversy"); *Mastrio v. Sebelius*, 768 F.3d 116, 120–21 (2d Cir. 2014) (even prohibitory injunctions can require the government to "take action").

*Reply in Support of Motion to Stay &*
*Alternative Motion for Preliminary Injunction*

promotion he could not reasonably refuse. Peter also immediately tried to return the grant money. *See* Smith Decl., ECF 27-4, 27-5; Flores Decl., ECF 17 ¶¶ 14, 16–17. This is nothing like the kind of criminal wrongdoing that justifies extreme fines. *United States v. Bajakajian*, 524 U.S. 321, 337–38 (1998) (reporting violation reflected "minimal" degree of criminality); *cf., e.g., United States v. Viloski*, 814 F.3d 104, 113 (2d Cir. 2016) (willful participation in kickback scheme); *United States v. George*, 779 F.3d 113, 123 (2d Cir. 2015) (willful harboring of noncitizen); *Farina v. Metro. Transp. Auth.*, 409 F. Supp. 3d 173, 202 (S.D.N.Y. 2019) (plausible excessive fines claim for traffic fines incurred "unwitting[ly]"). Peter committed no actual wrongdoing—he did not commit any civil, much less criminal violation, nor did his conduct "threaten[] public safety." *Farina* 409 F. Supp. 3d at 202. Instead, the Agency punished Peter for excelling at his job. This factor weighs heavily in Peter's favor.

Under the second factor—the relationship between the challenger and the statutory scheme—the Agency argues Peter "falls squarely within the class of persons" the statute regulates. Agency Opp., 9 (quoting *United States v. Castello*, 611 F.3d 116, 122 (2d Cir. 2010)). But the question is whether Peter is the type of bad actor Congress targeted, not whether the statute applies to him. *See Bajakajian*, 524 U.S. at 338 (person who committed reporting violation was not "a money launderer, a drug trafficker, or a tax evader").

Congress designed the penalty provision to deter highly compensated health professionals from pocketing grant funds and walking away from underserved communities. *See* 133 Cong. Rec. H23617-23618 (Sept. 9, 1987) ("We are talking

about the couple who does not want to pay, where they pay their maid more than it costs to repay their loan; the doctor with his $200,000 income who welshed on his deal . . . the ones who are the rotten apples."). Peter pocketed nothing—he tried to repay his full award. Nor has he left his underserved community to pursue a lucrative private practice. Peter accepted a modest promotion serving at the same hospital. He is not who Congress had in mind in enacting these penalties.

As to the third factor—the maximum penalty allowed—this statutory penalty is excessive precisely because it does not distinguish between levels of culpability, instead imposing treble-plus penalties on Peter and on a person who pocketed the money and "welshed" on their deal. 133 Cong. Rec. H23617-23618 (Sept. 9, 1987); *Reese v. Triborough Bridge & Tunnel Auth.*, 91 F.4th 582, 593 (2d Cir. 2024) ("what matters is the actual misconduct that triggered the fines"). The fines are clearly meant to punish without considering the relationship between the penalty and any wrongdoing. *Bajakajian*, 542 U.S. at 337 ("If the amount of the forfeiture is grossly disproportionate to the gravity of the defendants' offense, it is unconstitutional.").

The Agency claims a "strong presumption" of constitutionality favors statutory damages. Agency Opp., 9 (citing cases applying presumption in criminal context); *see, e.g., United States v. Varrone*, 554 F.3d 327, 332 (2d. Cir. 2009) (court-imposed forfeiture after conviction). No presumption can apply here because Peter committed no crime. *Cf. id*. But even if it did, the presumption is rebutted because the statutory damages have no "articulable correlation" to actual loss. *Bajakajian*, 524 U.S. at 339–40. In fact, a person convicted of <u>stealing</u> $25,000 from the government would face a

maximum statutory fine of $50,000. *See* 18 U.SC. § 641; 18 U.S.C. § 3571(d).[2] Yet Peter faces over $95,000 in penalties for a $25,000 grant he tried to return.

Under the fourth factor—the degree of harm caused—the Agency contends that its ability to incentivize workers to accept health care jobs in underserved communities is harmed if it cannot punish workers who fail to fulfill their obligations. Agency Opp., 12. The Agency also claims Peter's promotion injured his patients. *Id.* But the Agency fails to explain how treble plus punitive fines prevent these alleged harms.[3] Moreover, Peter's qualifying position was filled so quickly that he could not return to it—and he continued to serve the same patient population in his new role, including handling patient care when escalations occurred. Flores Decl. ¶ 10; *cf. Bajakajian*, 524 U.S. at 339 (forfeiture excessive where currency "was unrelated to any other illegal activities" and harm to government "minimal"). The Agency identifies no specific harm arising from Peter's conduct. This factor favors Peter.

Finally, the Agency incorrectly states that courts have universally "upheld the damages provision." Agency Opp., 11. But the only court to analyze the provision under the Eighth Amendment denied summary judgment because it found "the fine

---

[2] The guideline range is even lower, with a minimum fine of $4,000 and a maximum fine of $40,000. U.S.S.G. 5E1.2.

[3] The Agency's reliance on *Reese* is also misplaced. *Reese* upheld toll-evasion fines because enforcement "would be difficult" without strong deterrence and the fines were substantially lower than the statutory maximum. 91 F.4th at 593. Here, even though Congress expressly determined not every breach warrants penalties, 42 U.S.C. § 254*o*(d)(2), the Agency imposed greater-than-treble-damages on Peter without any particularized inquiry.

amounts potentially to an excessive civil penalty." *Johnson v. Becerra*, 674 F. Supp. 3d 949, 956-59 (D. Mont. 2023).[4] Peter is likely to succeed on Count I.

### B.    The penalties violate the Seventh Amendment.

The Agency's Seventh Amendment argument turns on two propositions: that *SEC v. Jarkesy*, 603 U.S. 109 (2024), is confined to "civil penalties sought by the SEC for securities fraud," and that the public-rights exception swallows any case in which the government provides a benefit to a private party. Agency Opp., 11–13. The Supreme Court rejected both propositions.

First, *Jarkesy* is not so limited. Rather, it analyzed a Seventh Amendment claim under two prongs: whether it is "legal in nature," and whether the public-rights exception applies. 603 U.S. at 122, 139 (the Seventh Amendment applies "to novel statutory regimes, so long as the claims are akin to common law claims"). The claim and remedy here—damages for breach of contract—are legal and consistent with paradigmatic common-law claims. *See* Pl. Mem., 12–13.

As such, the Seventh Amendment applies <u>unless</u> the public-rights exception applies. *Jarkesy*, 603 U.S. at 131 (noting that the public rights exception requires "close attention" lest it "swallow the rule"). The exception is limited to matters that did not historically exist at common law, such as revenue collection, immigration, public lands administration, and public benefits. *Id.* at 112. Imposing punitive damages for breach-of-contract is none of these. It is an action historically brought in

---

[4] The *Johnson* court denied a preliminary injunction as to interest but did not consider collections because the Agency did not pursue collections. *Johnson v. Becerra*, No. CV-22-55-GF-BMM, 2022 WL 16921542 (D. Mont. Nov. 14, 2022).

*Reply in Support of Motion to Stay &*
*Alternative Motion for Preliminary Injunction*

6

courts of law and tried by juries. *See Tull v. United States*, 481 U.S. 412, 418–21 (1987) (describing common-law actions).

The Agency relies on nonbinding, unpersuasive cases. *See NCRNC, LLC v. Kennedy*, No. 1:2-cv-00607, 2026 WL 145591, at \*5 (N.D.N.Y. Jan. 20, 2026), *appeal docketed*, No. 26-694 (2d. Cir. Mar. 20, 2026) (penalties assessed against Medicare provider not like common law negligence damages because government did not seek "compensation for negligently inflicted injury"); *Wells v. Loeffler*, No. 24-3946, 2026 WL 555065, at \*3 (9th Cir. Feb. 27, 2026) (Collins, J., concurring) (concurrence to memorandum opinion denying Seventh Amendment claim made first on appeal regarding government's attempts to recover loan principle), *Fagan v. HHS*, 2025 WL 1837402, at \*15 (D. Md. July 2, 2025) (plaintiffs failed to explain why public rights exception should not apply to attempts to recover debt collection costs). Here, the Agency seeks to impose more than treble damages against Peter for breach of contract, not to recover the grant principle or other costs. This is a prototypical common law claim. *See Jarkesy*, 603 U.S. at 111.

The Agency's reading would allow the government to impose punitive fines in any transaction with a private party. That is exactly the sort of rule-swallowing exception that *Jarkesy* foreclosed. *Cf.* 603 U.S. at 112 ("[E]ven with respect to matters that arguably fall within the scope of the public rights doctrine, the presumption is in favor of Article III courts."). If the government's mere participation triggered the exception, *Jarkesy* would have come out the other way.

*Reply in Support of Motion to Stay &*
*Alternative Motion for Preliminary Injunction*

Finally, the Agency's contention that there are "no disputed facts for a jury to resolve," Agency Opp., 13 n.8, misunderstands the law. In common-law contract claims, a jury typically determines whether a breach has occurred, and what actual damages, if any, resulted. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (1962) ("[P]etitioner has a right to have the jury determine not only whether the contract has been breached and the extent of the damages if any but also just what the contract is."). Peter is entitled to a jury on these issues before penalties may be levied. *See id.; cf. Jarkesy*, 603 U.S. at 140 ("A defendant facing a fraud suit has the right to be tried by a jury of his peers before a neutral adjudicator."). Indeed, the fact the Agency considers these questions resolved simply confirms that it views itself as "prosecutor, judge, and jury," in violation of the "separation of powers that the Constitution demands." 603 U.S. at 140.  Peter is likely to succeed on Count II.

## II.    Peter is likely to suffer irreparable harm.

Because the Agency has already referred his debt to collections and interest is compounding daily at 12.375%, ECF 17-4, 17-5, Peter will suffer certain, non-compensable harm absent an injunction. Peter is entitled to pursue his constitutional claims without suffering severe and potentially irreversible consequences.

The Agency asserts that economic harm is "rarely irreparable." Agency Opp., 13–14. But it relies exclusively on cases where monetary damages remain available. *Id.* Economic harm is irreparable when monetary damages are unavailable. *See, e.g.*, *Regeneron Pharms., Inc. v. HHS*, 510 F. Supp. 3d 29, 39 (S.D.N.Y. 2020) ("[W]here a plaintiff cannot recover damages due to sovereign immunity, monetary loss may

amount to irreparable harm."). The APA does not authorize money damages. *See* 5 U.S.C. § 702 (waiving sovereign immunity for non-monetary relief only). Thus, absent assurances that the Agency will disgorge improperly collected penalties, it is unclear whether Peter can recover improperly collected interest or garnished funds.

Similarly, the Agency asserts that interest can be "appropriately addressed in a final decision on the merits." Agency Opp., 14–15. But the Agency offers no basis upon which this Court could compel the United States to return collected moneys.

Finally, the Agency suggests that Peter delayed in seeking preliminary relief. Agency Opp., 15. But Peter acted promptly when the Agency sent him to collections mere days after he filed suit, first requesting that the Agency stay collection on his debt and any further accrual of interest, and filing for injunctive relief after the Agency refused. Decl. of K.N. McCleary, ECF 18 ¶ 4; *see Trustco Bank, Nat. Ass'n v. Glens Falls Nat. Bank & Tr. Co.*, 903 F. Supp. 335, 339 (N.D.N.Y. 1995) ("[D]elay while reasonably attempting to settle the matter out of court does not undercut preliminary injunctive relief."). Moreover, during the time in which the Agency asserts that Peter "delayed" in seeking relief, he was actively engaged in the Agency's administrative waiver process. Flores Decl. ¶¶ 16–17. The Agency cannot insist on administrative exhaustion and then complain about its own delay in adjudicating Peter's waiver requests. Regardless, "[d]elay is just one of several factors to consider" under irreparable harm. *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 969 (2d Cir. 1995) (Jacobs, J., concurring).

*Reply in Support of Motion to Stay &*
*Alternative Motion for Preliminary Injunction*

9

### III.    The balance of the equities and public interest favor Peter.

The equities tip sharply in Peter's favor. Peter faces immediate injury if the Agency garnishes his wages or tax-refund, including damage to his credit. *Supra* Part. II. By contrast, the Agency will not be "substantially injure[d]" by preliminary relief. *Nken v. Holder*, 556 U.S. 418, 426 (2009). It will continue operations and its relationship with participants will be unaffected. Nor can its inability to collect interest while the case is pending cause significant harm. *See Guirola-Beeche v. Dep't of Justice*, 662 F. Supp. 1414, 1419 (S.D. Fla. 1987) (waiver of interest "appropriate" because "there is little potential for harm to the [government] if interest and fees are not accrued during the pendency of this proceeding"). By contrast, allowing Peter's constitutional claims to be heard before the Agency extracts irreversible and extreme penalties from him serves the public interest. *See id.* ("the public interest is better served by assuring that a governmental agency properly executes its laws").

### CONCLUSION

The Court should grant Peter's motion for preliminary relief.

Respectfully submitted this 22nd day of May, 2026.

> /s/ *K.N. McCleary*
> Rylee Sommers-Flanagan*
> K.N. McCleary
> Upper Seven Law
>
> Adam D. Hollander
> Luc C. Pierre-Louis
> Slarskey LLC
>
> Constance Van Kley*
> Van Kley Law PLLC
>
> *Attorneys for Plaintiff*
> * *Pro Hac Vice forthcoming*

## CERTIFICATE OF COMPLIANCE

Per Local Rule 7.1(c), I certify that this reply brief in support of Plaintiff's motion for a preliminary injunction does not exceed ten pages, includes 2,729 words, excluding caption, certificate of compliance, table of contents and authorities, and certificate of service, as counted by Microsoft Word's word count feature.

DATED this 22nd day of May, 2026.

/s/ *K.N. McCleary*
Rylee Sommers-Flanagan*
K.N. McCleary
Upper Seven Law

*Attorneys for Plaintiff*
*\* Pro Hac Vice forthcoming*